In re:                                                   Chapter 11

255 Butler LLC,                          Case No. 23-43575-ESS

                                      Debtor.

------------------------------------------------------x

## DEBTOR'S LIQUIDATING PLAN OF REORGANIZATION

255 Butler LLC (the "Debtor") hereby proposes the following Chapter 11 liquidating plan of reorganization (the "Plan") pursuant to the provisions of Title 11 of the United States Code (the "Bankruptcy Code").

## OVERVIEW OF THE PLAN

The Debtor sought Chapter 11 relief to utilize the provisions of the Bankruptcy Code to sell the Debtor's real property at 255 Butler Street, Brooklyn, NY (the "Property") for going concern value under a robust auction sale process. The Property is subject to a highly contentious litigation with 255 Butler Associates LLC (the "Tenant") with respect to a variety of claims that were determined adversely to the Debtor, resulting in a judgment in the amount of approximately $36.2 million. The judgment, however, is subordinate to a senior first mortgage lien held by Maguire Butler LLC (the "Senior Lender") in the total sum of $13,458,246.13 as of August 15, 2023. Rather than expose the Property to a Sheriff's sale, the Debtor opted to commence this Chapter 11 case and immediately proceed with a sale process.

The Debtor has already obtained a proposed contract (the "Sale Contract") to sell the Property to Bokara Group, Inc. or its designee (the "Stalking Horse") for the sum of $14,500,000. The sale shall be free and clear of all claims, liens and interests, except for the assumption of the existing Net Lease with the Tenant (as defined below), pursuant to 11 U.S.C. §

363(b) and (f) and applicable Bankruptcy Rules. The Debtor has moved (the "Sale Motion") to designate the Stalking Horse and obtain approval of related bidding procedures to be used in marketing the Property. The hearing on the Sale Motion is scheduled for January 23, 2024 and the Debtor also intends to seek the retention of an acceptable broker.

As part of the sale process, the Debtor is filing this liquidating Plan to effectuate the sale pursuant to a confirmed plan. The Plan provides for the payment of allowed claims in whole or part, in accordance with the bankruptcy priority scheme. Because the Plan enables the Debtor to qualify for a transfer tax exemption under 11 U.S.C. §1146(a), the holders of Allowed Claims (excluding the Tenant's deficiency claim) shall receive a *pro rata* dividend based upon a General Unsecured Creditor Fund in the sum of $75,000 (the "Unsecured Creditor Fund").

## ARTICLE I

## DEFINITIONS

Terms not otherwise defined shall have the following meanings for purposes of the Plan.

1.1. **"Administrative Claim"** means a Claim or request for payment of costs and expenses of administering the Chapter 11 case allowable under §§ 503(b) and 507(b) of the Bankruptcy Code including: (a) the actual and necessary costs and expenses incurred by the Debtor after the Petition Date of operating its business and preparing for a closing; (b) compensation for the Debtor's counsel awarded by the Bankruptcy Court under §§ 330 and 331 (hereinafter "Professional Fees").

1.2. **"Allowed Claim"** means a Claim timely filed before the Bar Date, or which was scheduled by the Debtor without being designated as contingent, unliquidated or disputed, and, in either case, a claim as to which no objection to the allowance thereof (including a request for estimation) has been filed on or before the Claims Objection Deadline; or (b) as to which any

objection has been settled, waived, withdrawn or denied by a Final Order; or (c) that is Allowed (i) by a Final Order; (ii) by an agreement between the Holder of such Claim and the Debtor; or (iii) pursuant to the terms of the Plan.

1.3. "**Auction**" means the auction sale of the Property to be conducted by the Court appointed broker following the conclusion of the marketing period.

1.4. **"Available Cash"** means the net proceeds generated from the Sale to be deposited into the Confirmation Account and distributed by the Disbursing Agent in accordance with the terms of this Plan after payment of real estate taxes, a break-up fee as applicable, auction expenses as applicable, and reasonable and standard closing costs and expenses.

1.5. "**Bankruptcy Code**" or the "**Code**" means title 11 of the United States Code, 11 U.S.C. §§101 et seq.

1.6. "**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District of New York.

1.7. "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, and the Local Rules of the Bankruptcy Court.

1.8. "**Bankruptcy Schedules**" mean the schedules of assets and liabilities, lists of executory contracts and unexpired leases, statements of financial affairs, and related information filed by the Debtor pursuant to Bankruptcy Rule 1007, as same may have been amended or supplemented.

1.9. "**Bar Date**" means February 16, 2024, the deadline to be set by Order of the Bankruptcy Court as the last day for the filing of Claims in the Debtor's case.

1.10. "**Business Day**" means any day, excluding Saturdays, Sundays or "legal holidays".

1.11. **"Claim"** means a claim against the Debtor as defined in Bankruptcy Code § 101(5).

1.12. **"Claims Objection Deadline"** shall mean thirty (30) days after the Effective Date.

1.13. **"Class"** means all of the Holders of Claims or Interests having substantially similar to the other Claims or Interests and which have been designated as a class in the Plan.

1.14. **"Closing"** means the closing on the Sale, which shall be held no later than thirty (30) days following the conclusion of the auction, or such other date as may be fixed by the Court.

1.15. **"Confirmation"** means approval of the Plan by the Bankruptcy Court pursuant to 11 U.S.C. §1129 following a hearing thereon.

1.16. **"Confirmation Account"** means the escrow account to be established by the Disbursing Agent at the Closing from the Available Cash for use in making the payments due under this Plan.

1.17. **"Confirmation Order"** means the order of the Bankruptcy Court approving the Plan pursuant to Bankruptcy Code § 1129.

1.18. **"Creditor"** means a Holder of an Allowed Claim.

1.19. **"Disbursing Agent"** means Goldberg Weprin Finkel Goldstein LLP as the Debtor's counsel.

1.20. **"Disputed Claim"** means any Claim as to which the Debtor or the Disbursing Agent have interposed an objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules prior to the Confirmation Hearing.

1.21. **"Effective Date"** means the date of the Closing on the Sale of the Property.

1.22. **"Final Order"** means an Order entered by the Bankruptcy Court as to which (a) the time to appeal or reargue has expired and as to which no appeal or motion for reargument has been granted; or (b) in the event that a further appeal or motion for reargument, has been sought, such order or judgment shall have been affirmed by the highest court to which such order or judgment was appealed.

1.23. **"General Unsecured Claims"** means all allowed Unsecured Claims of creditors not entitled to priority in bankruptcy.

1.24. **"Interest"** means the legal and equitable membership interests in the Debtor.

1.25. "**Net Lease**" shall meet the net lease dated as of March 22, 2013 between the Debtor as landlord and 255 Butler Associates LLC as Tenant.

1.26. **"Petition Date"** means October 3, 2023.

1.27. **"Plan"** means this Plan as it may be further amended, modified, or supplemented.

1.28. **"Priority Tax Claim"** means a Claim of any federal or state taxing authorities.

1.29. **"Reorganized Debtor"** means the Debtor following the Effective Date.

1.30. **"U.S. Trustee Fees"** means fees payable pursuant to 28 U.S.C. § 1930.

## ARTICLE II

## UNCLASSIFIED CLAIMS

2.1 Pursuant to Section 1123(a) of the Bankruptcy Code, the Plan does not classify Administrative Claims, Priority Tax Claims or Bankruptcy Fees, all of which shall be paid in full as required by 11 U.S.C. §1129(a)(9) from the monies on hand in the Confirmation Fund.

2.2. <u>**Administrative Expenses**</u>. Administrative Expenses consist of Professional Fees and any allowed unpaid fees, costs and expenses incurred by the Debtor in maintaining the Property during the Chapter 11 case. To the extent that any Administrative Expenses have not

been paid prior to the Effective Date, each holder of an Administrative Claim shall be paid from the funds on deposit in the Confirmation Account.

    2.3    **Professional Fee Claims**. All requests for allowance of Professional Fee Claims shall be filed no later than thirty (30) days after the Effective Date in accordance with 11 U.S.C. §330. After notice and a hearing, the allowed amounts of such Professional Fee Claims shall be paid by the Disbursing Agent from the Confirmation Fund upon entry of an appropriate Order of the Bankruptcy Court awarding same.

    2.4    **Priority Tax Claims**. According to Acris, unpaid real estate taxes currently total approximately $612,000. The open and outstanding real estate taxes owed by the Debtor as of the Effective Date shall be treated as Priority Tax Claims and shall be paid in full at the Closing from Available Cash.

    2.6    **U.S. Trustee Fees**. To the extent not otherwise paid, the Debtor shall pay all accrued U.S. Trustee Fees, together with any interest thereon, from monies held in the Confirmation Fund. Bankruptcy Fees, together with any applicable interest, shall be paid until the Chapter 11 case is closed by entry of a Final Decree.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

    3.1    **Classification of Claims and Interests**. The Plan classifies Claims and Interests against the Debtor consistent with the applicable provisions and standards of the Bankruptcy Code.

    3.2    **Summary**. The categories listed below classify Claims and Equity Interest against the Debtor for all purposes, including voting, confirmation and distribution pursuant to Sections 1122 and 1123(a)(l) of the Bankruptcy Code, as summarized below:

| Class | Designation | Impaired | Entitled to Vote |
|---|---|---|---|
| Class 1 | Senior Lender | Yes | Yes |
| Class 2 | Tenant | Yes | Yes |
| Class 3 | General Unsecured Claims | Yes | Yes |
| Class 4 | Equity Interest Holders | N/A | N/A |

3.3     **Class 1 –<u>Secured Claim of the Lender</u>**.  Class 1 consists of the allowed Secured Claim of the Senior Lender in the sum of at least $13,458,246.13 plus accrued post-petition interest and other permitted charges.  The Senior Lender has not yet filed a formal proof of claim.

**<u>Treatment</u>:**  The Allowed Class 1 Secured Claim shall be paid from Available Cash on the Effective Date, after payment of allowed administrative expenses and priority real estate taxes.

Although the Stalking Horse bid of $14,500,000 is higher than the current amount due to the Senior Lender as of the Petition Date, the Class 1 Claim of the Senior Lender will continue to accrue post-petition interest, legal fees and other charges which will invariably increase the amount of its claim.  Moreover, since the Class 1 Secured Claim is subject to a carve-out for broker's commissions, professional fees and real estate taxes, it is possible that the Senior Lender's Secured Claim will not be paid in full.  Accordingly, the Senior Lender is treated as impaired for purposes of the Plan and is eligible to vote.

The Allowed Class 1 Claim of the Senior Lender shall have various credit bid rights pursuant to the bidding procedures, but its deficiency claim shall not be eligible to share in the Unsecured Creditor fund.

3.4     **Class 2 – <u>Secured Judgment Lien Claim of the Tenant</u>**.  Class 2 consists of the allowed Secured Claim of the Tenant in the sum of up to $36,241,836.  The Tenant's judgment remains subject to a pending appeal, and the Debtor reserves all rights to perfect the appeal.

**Treatment:**  The Allowed Class 2 Claim of the Tenant shall be paid from Available Cash on the Effective Date, after payment of allowed administrative expenses, professional fees, real estate taxes and the Allowed Secured Claim of the Senior Lender.   The Allowed Class 2 Claim of the Tenant shall have various credit bid rights pursuant to the bidding procedures, but its deficiency claim shall not be eligible to share in the Unsecured Creditor fund.

**Voting**  The Class 2 Claim is impaired and the Class 2 Claimant is entitled to vote.

3.5     **Class 3 – <u>General Unsecured Claims</u>**.  Class 3 consists of the Allowed General Unsecured Claims.

**Treatment**   On the Effective Date, each holder of an Allowed Class 2 General Unsecured Claim shall be paid a *pro rata* share of the Unsecured Creditor Fund in the sum of $75,000.

**Voting**  Class 3 is impaired and entitled to vote.

3.6     **Class 4 – <u>Equity Interests</u>**.  Class 4 consists of the respective membership interests of the equity interest holders in the Debtor.

**Treatment.**  The pre-petition equity and membership interests in the Debtor shall be cancelled following the Closing on the Sale, likely without any distribution.

**Voting**  The Class 4 claims are not eligible to vote by reason of their insider status.

# ARTICLE IV
# MEANS FOR IMPLEMENTING THE PLAN

4.1     **Implementation.**     The Plan and distributions provided herein shall be implemented through a sale of the Property in accordance with bid procedures and other terms

fixed by the Bankruptcy Court. The Confirmation Order shall constitute an order of the Bankruptcy Court authorizing the Debtor for title purposes, on the occurrence of the Effective Date, to sell the Property pursuant to 11 U.S.C. §§363(b) and (f) and 1123(a)(5)(B). The sale shall befree and clear of all Liens, Claims, Encumbrances or interests, except for the Net Lease with the Tenant which shall be assigned pursuant to the bidding procedures.

4.2  **Post-Closing Date Transactions.** At or after the Closing, the Disbursing Agent, on behalf of the Debtor, is hereby authorized to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the transfer of the Property, including the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of this Plan and having other terms for which the applicable parties agree.

4.3  **Transfer of Assets.** On the Closing Date, title to the Property shall be transferred to the designated purchaser pursuant to and in furtherance of this Plan by means of the following:

a.  a Bargain and Sale Deed to the Property in form and substance reasonably acceptable to the designated purchaser to be recorded in the appropriate register's office (the "Deed"), together with any and all customary New York City and State closing documents, including all state and local real property transfer tax returns and any and all affidavits, certificates and other documents which are usual and customary to facilitate a sale of real property in New York City; and

b.  a Bill of Sale, in form and substance reasonably acceptable to the designated purchaser, transferring all personal property of the Debtor used in or useful to the operation and maintenance of the Property.

4.4     **Transfer Tax Exemption.** To the fullest extent permitted by Section 1146(a) of the Bankruptcy Code, the Sale of the Property shall be exempt from the payment of transfer, stamp, deed, mortgage recording or similar taxes, since all of the transactions are being done, and constitute a "transfer under and in furtherance of a confirmed plan of reorganization" in bankruptcy.

4.5     **Post-Confirmation Stays/Injunctions**. All stays pursuant to Section 362 of the Bankruptcy Code shall remain in full force and effect until the close of the bankruptcy case and entry of a Final Decree. All Creditors who hold, have held, or may hold a Claim or Claims against the Debtor are permanently enjoined on and after the Confirmation Date from (i) commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim; (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or Order against the Property; (iii) creating, perfecting or enforcing any encumbrance of any kind against the Property; and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Property.

4.6     **Effect of Confirmation**. Except for the rights conferred under this Plan, any and all persons or entities who or which hold Claims against the Debtor are hereby permanently and forever enjoined from instituting any action or proceeding whatsoever in law or equity relating to any and all prior transactions involving or relating to the Debtor or the Property.

## ARTICLE V

## PAYMENT OF DIVIDENDS

5.1     **Distributions.** The Disbursing Agent shall pay all required distributions to Creditors in accordance with the terms of the Plan on the Effective Date.

5.2     **Delivery of Distributions.**  The distributions to the holders of Allowed Claims shall be forwarded: (i) to the address set forth on any allowed Proof of Claim filed, or (ii) at the addresses reflected in the Debtor's Bankruptcy Schedules.  If a distribution to any Creditor is returned as undeliverable without a forwarding address, no further distributions to such Creditor shall be made.  All claims for undeliverable distributions shall be made on or before the 180th day after the first distributions under the Plan.  All unclaimed dividends by a Creditor shall revert to the Debtor.

5.3     **Procedures for Treating and Resolving Disputed Claims**.  Objections to Claims shall be filed prior to the Claims Objection Date.  In the event that a claim is a Disputed Claim as of the date a distribution is to be made hereunder, the Disbursing Agent shall remit the full amount of the undisputed portion of the claim, and establish a Disputed Claim Reserve, to be held unless and until objections to the Disputed Claim have been settled or withdrawn or have been determined by a Final Order.  If the Disputed Claim is eventually allowed, in whole or part, it shall be satisfied from the Disputed Claim Reserve.  If the Disputed Claim is eventually disallowed, in whole or in part, the disallowed portion of the claim shall be released from the Disputed Claim Reserve Fund and returned to the Reorganized Debtor for redistribution in accordance with the terms hereof.

5.4.    **Unclaimed Distribution**   In the event any creditor fails to claim any distribution within one-hundred eighty (180) days from the date of issuance, such creditor shall forfeit all rights thereto and the distribution shall revert to the Reorganized Debtor for redistribution in accordance with the terms hereof.

## ARTICLE VI

## EXECUTORY CONTRACTS

6.1	The Net Lease with the Tenant shall be assigned to the successful purchaser at the Closing without payment in full of the judgment amount.

## ARTICLE VII

## MODIFICATION OF THE PLAN

7.1	The Debtor reserves the right to modify the Plan in accordance with §1127 of the Bankruptcy Code as may be applicable, upon proper application after notice and a hearing.

## ARTICLE VIII

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE OF THE PLAN

8.1.	**Conditions Precedent to the Effective Date.** The following are conditions precedent to the Effective Date that must be satisfied:

a.	Confirmation shall have occurred and the Confirmation Order shall have been entered by the Bankruptcy Court;

b.	The Confirmation Order shall have become a Final Order, unless the Bankruptcy Court waives the period set forth in Bankruptcy Rule 6004(h);

c.	The Closing Date shall have occurred, the purchase price received by the Debtor, and title to the Property shall have been conveyed to the designated purchaser in accordance with this Plan and the Confirmation Order; and

d.	There shall not be in effect on the Effective Date any Order entered by a court of competent jurisdiction staying, restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by the Plan.

## ARTICLE IX

## RETENTION OF JURISDICTION

9.1     The Bankruptcy Court shall retain jurisdiction over the following matters: (i) consideration of any modification of the Plan under §1127 of the Bankruptcy Code; (ii) resolve all matters arising under or relating to the Plan, including, without limitation, the approval, enforcement, and interpretation of any issues or disputes relating to the Sale of the Property or the post-confirmation Closing thereon; (iii) to hear and determine all controversies, suits and disputes that may arise in connection with the interpretation or enforcement of the Plan; (iv) to determine any objections to Claims; (v) to hear and determine all requests and applications for compensation and/or reimbursement of expenses which may be filed by the Debtor's counsel; (vi) to consider any other matters to aid in the implementation of the Plan; and (vii) to issue a Final Decree.

## ARTICLE X

## GENERAL PROVISIONS

10.1    **Payment Dates**.  Whenever any payment or distribution to be made under this Plan shall be due on a day other than a business day, such payment or distribution shall instead be made on the following business day.

10.2    **Post-Confirmation Reports**.  The Debtor shall file quarterly post-confirmation status and disbursement reports, beginning on the Effective Date, by the 20th day after the end of the relevant reporting quarter, using the forms promulgated in compliance with 28 CFR § 58.8. The post-confirmation status and disbursement reports shall be filed until the closing of this case with the entry of a final decree, the dismissal of this case, or the conversion of this case, whichever happens earlier.

10.3    **Payments of US Trustee Fees**.  All US Trustee Fees payable to the Office of the United States Trustee, together with all applicable interest, shall be brought current on the Effective Date and timely paid thereafter through the earlier of conversion, dismissal or entry of a Final Decree closing the Bankruptcy Case.

10.4    **Notice of Effectiveness**.  Within three (3) business days after the entry of the Effective Date, the Debtor shall file Notice that the Plan is Effective.

10.5    **Entry of Final Decree**.  Within 14 days following the full administration of the estate, but not later than 18 months following the entry of the order confirming a plan, the Debtor shall file, on notice to the United States Trustee, an application and a proposed order for a final decree pursuant to Bankruptcy Rule 3022.

10.6    **Headings**.  The headings in this Plan are for reference purposes only and shall not limit or otherwise affect the meaning of the terms of this Plan.

Dated: New York, New York
       January 2, 2024

| 255 Butler LLC | GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP<br>Attorneys for the Debtor<br>125 Park Avenue, 12th Floor<br>New York, NY 10017 |
|---|---|
| By:   /s/ Margaux Levy<br>      Manager | By:   /s/ Kevin J. Nash |