UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Chapter 11 |
| 255 Butler LLC, | Case No. 23-43575-ESS |
| Debtor. | |

## TENANT'S LIQUIDATING PLAN OF REORGANIZATION

255 Butler Associates LLC (the "Tenant" and "Proponent") hereby proposes the following Chapter 11 plan of reorganization (the "Plan") of 255 Butler LLC (the "Debtor") pursuant to the provisions of Title 11 of the United States Code (the "Bankruptcy Code").

## OVERVIEW OF THE PLAN

On the Effective Date, the Proponent shall fund sufficient cash to the Disbursing Agent to (i) pay all Allowed Administrative Claims and Allowed Priority Tax Claims and (ii) establish a $150,000 Unsecured Creditor Recovery Fund, which shall be distributed to holders of Allowed Class 3 General Unsecured Claims on a pro rata basis. Additionally, upon the Effective Date, or such later date upon which a Final Order is entered fixing the amount, validity and priority of the Lender's Allowed Class 1 Claim, the Proponent shall remit directly to the Lender cash in full in the amount of its Allowed Senior Secured Claim. Holders of Class 4 Interests will receive no distribution under the Plan, and such Interests shall be deemed discharged, canceled and of no further force and effect.

In consideration for the Proponent funding the Plan, the Debtor shall transfer all of the Debtor's Assets, including, without limitation, the Property, and all Causes of Action, to Proponent

1

or its assignee or designee, free and clear of all Liens, Claims, encumbrances and interests, other than as described herein with respect to the Lender's Lien.

# ARTICLE I

## DEFINITIONS

Terms not otherwise defined shall have the following meanings for purposes of the Plan.

1.1.    "**Administrative Claim**" means a Claim or request for payment of costs and expenses of administering the Chapter 11 case allowable under §§ 503(b) and 507(b) of the Bankruptcy Code including: (a) the actual and necessary costs and expenses incurred by the Debtor after the Petition Date of operating its business and preparing for the occurrence of the Effective Date; and (b) compensation for the Debtor's counsel awarded by the Bankruptcy Court under §§ 330 and 331 (hereinafter, "Professional Fees").

1.2.    "**Affiliate**" means an "affiliate" as defined in section 101(2) of the Bankruptcy Code.

1.3.    "**Allowed Claim**" means a Claim (a) timely filed before the Bar Date, or which was scheduled by the Debtor without being designated as contingent, unliquidated or disputed, and, in either case, a claim as to which no objection to the allowance thereof (including a request for estimation) has been filed on or before the Claims Objection Deadline; (b) as to which any objection has been settled, waived, withdrawn or denied by a Final Order; or (c) that is Allowed (i) by a Final Order or (ii) pursuant to the terms of the Plan.

1.4.    "**Assets**" means all property of any kind or nature, real or personal, tangible, intangible or mixed, now existing or hereafter acquired or created, including, without limitation, all property interests of the Debtor or its estate as defined by section 541 of the Bankruptcy Code,

including the Property and all related assets of the Debtor, including permits, licenses, development rights, executory contracts, and all Causes of Action.

1.5.    "**Avoidance Actions**" means any and all avoidance, recovery, subordination or other actions or remedies that may be brought by and on behalf of the Debtor or its estate under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies arising under sections 502, 510 or 542-553 of the Bankruptcy Code.

1.6.    "**Bankruptcy Code**" or the "**Code**" means title 11 of the United States Code, 11 U.S.C. §§ 01 et seq,

1.7.    "**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District of New York.

1.8.    "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, and the Local Rules of the Bankruptcy Court.

1.9.    "**Bankruptcy Schedules**" mean the schedules of assets and liabilities, lists of executory contracts and unexpired leases, statements of financial affairs, and related information filed by the Debtor pursuant to Bankruptcy Rule 1007, as same may have been amended or supplemented.

1.10.    "**Bar Date**" means February 16, 2024, the deadline to be set by Order of the Bankruptcy Court as the last day for the filing of Claims in the Debtor's case.

1.11.    "**Business Day**" means any day, excluding Saturdays, Sundays or "legal holidays".

1.12.    "**Causes of Action**" means any Claims, causes of action (including Avoidance Actions), demands, actions, suits, obligations, liabilities, cross-claims, counter-claims, offsets, or setoffs of any kind or character whatsoever, in each case, whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, direct

or indirect, choate or inchoate, existing or hereafter arising, in contract, in tort, in law, or in equity, or pursuant to any other theory of law, whether asserted or assertable directly or derivatively in law or equity or otherwise by way of claim, counterclaim, cross-claim, third party action, action for indemnity or contribution or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date.

1.13.    "**Chapter 11 Case**" means this case under Chapter 11 filed by the Debtor on the Petition Date.

1.14.    "**Claim**" means a claim against the Debtor as defined in Bankruptcy Code § 101(5).

1.15.    "**Claims Objection Deadline**" shall mean thirty (30) days after the Effective Date.

1.16.    "**Class**" means all of the holders of Claims or Interests having substantially similar to the other Claims or Interests and which have been designated as a class in the Plan.

1.17.    "**Confirmation**" means approval of the Plan by the Bankruptcy Court pursuant to 11 U.S.C. §1129 following a hearing thereon.

1.18.    "**Confirmation Account**" means the escrow account to be established by the Disbursing Agent on or before the Effective Date from the funding of the Plan Consideration for use in making the payments due under this Plan.

1.19.    "**Confirmation Order**" means the order of the Bankruptcy Court approving the Plan pursuant to Bankruptcy Code § 1129.

1.20.    "**Creditor**" means a holder of an Allowed Claim.

1.21.    "**Disbursing Agent**" means the disbursing agent designated by the Proponent in the Plan Supplement.

4889-5002-1328, v. 3

1.22.    "**Disclosure Statement**" means the disclosure statement filed or to be filed by the Proponent as required pursuant to Section 1125 et seq. of the Bankruptcy Code.

1.23.    "**Disclosure Statement Approval Order**" means an order of the Bankruptcy Court approving the Disclosure Statement.

1.24.    "**Disputed Claim**" means any Claim as to which the Debtor, any party in interest, or the Disbursing Agent have interposed an objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules prior to the Confirmation Hearing, which dispute has not been withdrawn, resolved or overruled by Final Order.

1.25.    "**Disputed Claim Escrow Account**" means that certain escrow account which shall be funded with all amounts required to pay all Disputed Claims, other than the Class 1 Claim, if and when the Disputed Claims become Allowed Claims.

1.26.    "**Effective Date**" means the date on which all conditions to the effectiveness of the Plan have been satisfied.

1.27.    "**Final Order**" means either: (a) an order as to which the time to appeal, petition for writ of certiorari or move for reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment has expired, and as to which no appeal, petition for writ of certiorari or other proceedings in which a party is seeking reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment shall then be pending; or (b) in the event that an appeal, writ of certiorari, reargument, rehearing, reconsideration, new trial, or motion to alter or amend findings or judgment thereof has been sought, an order that has been affirmed by the highest court to which such order was appealed, or certiorari has been denied or from which reargument, rehearing, reconsideration, new trial, or motion to alter or amend findings or judgment was sought, and for which the time to take any further appeal, petition for writ of certiorari or move for

5

reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment shall have expired; provided, however, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure may be filed with respect to such order.

1.28.    "**General Unsecured Claims**" means a prepetition Claim that is not a Secured Claim or otherwise entitled to priority pursuant to section 507 of the Bankruptcy Code, including but not limited to (1) deficiency Claims of holders of Secured Claims; (2) Claims arising out of the successful prosecution of one or more of the Debtor's avoiding powers under the Bankruptcy Code; and/or (3) Claims arising out of the entry of an order by the Bankruptcy Court authorizing the Debtor's rejection of executory contracts and/or unexpired leases pursuant to Section 365 of the Bankruptcy Code.

1.29.    "**Governmental Unit**" means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

1.30.    "**Impaired**" means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.31.    "**Interest**" means the legal and equitable membership interests in the Debtor.

1.32.    "**Lender**" means the holder of the Class 1 Claim, Maguire Butler LLC, together with its successors and assigns.

1.33.    "**Lien**" means a "lien" as defined in section 101(37) of the Bankruptcy Code.

1.34.    "**Net Lease**" shall mean the net lease dated as of March 22, 2013, between the Debtor, as landlord, and 255 Butler Associates LLC, as tenant.

1.35.    "**Person**" means a "person" as defined in section 101(41) of the Bankruptcy Code and also include any natural person, corporation, limited partnership, limited liability company,

6

firm, trust, association, government, governmental agency or other entity, whether acting in an individual, fiduciary or other capacity.

1.36.    "**Petition Date**" means October 3, 2023.

1.37.    "**Plan**" means this Plan as it may be further amended, modified, or supplemented, including any exhibits, the Plan Supplement and all supplements, appendices, and schedules thereto, either in its present form or as the same may be altered, amended, modified or otherwise supplemented from time to time.

1.38.    "**Plan Consideration**" means cash in an amount sufficient to fund the Allowed amount of all Administrative Claims, Allowed Priority Tax Claims, U.S. Trustee Fees, the Class 1 Secured Claim and the Unsecured Creditor Recovery Fund.

1.39.    "**Plan Supplement**" means the supplement to this Plan to be filed with the Bankruptcy Court.

1.40.    "**Plan Supplement Deadline**" means the date that is seven (7) days prior to the deadline set by the Bankruptcy Court for voting in favor of or against the Plan.

1.41.    "**Priority Tax Claim**" means a Claim of any federal or state taxing authorities.

1.42.    "**Property**" means the Debtor's real property and improvements located at 255 Butler Street, Brooklyn, NY.

1.43.    "**Related Persons**" means, with respect to any Person, such Person's predecessors, successors, assigns or designees, managers, members, direct and indirect owners, insiders and present and former affiliates (whether by operation of law or otherwise) and subsidiaries, and each of their respective current and former officers, directors, principals, insiders, employees, stockholders, members, partners, agents, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, in each case,

acting in such capacity on or any time after the Petition Date, and any Person claiming by or through any of them.

1.44.    "**Reorganized Debtor**" means the Debtor following the Effective Date.

1.45.    "**Secured Claim**" means, any Claim (i) secured by a Lien on property in which the Debtor's estate has an interest to the extent of the value of a Debtor's interest in such property, as determined in accordance with section 506(a) of the Bankruptcy Code; or (ii) that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

1.46.    "**Senior Secured Claim**" means all or a portion of the Class 1 Claim, solely to the extent a Final Order determines the Class 1 Claim to be a valid, first priority Secured Claim that is not subject to equitable subordination or disallowance pursuant to Section 510(c) of the Bankruptcy Code or otherwise.

1.47.    "**Unimpaired**" means, with respect to a Class of Claims or Interests, a Claim or Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

1.48.    "**Unsecured Creditor Recovery Fund**" means a fund in the amount of $150,000, which shall be distributed on a pro rata basis to holders of Allowed General Unsecured Claims.

1.49.    "**U.S. Trustee Fees**" means fees payable pursuant to 28 U.S.C. § 1930.

**ARTICLE II**

**UNCLASSIFIED CLAIMS**

2.1.    Pursuant to Section 1123(a) of the Bankruptcy Code, the Plan does not classify Administrative Claims, Priority Tax Claims or Bankruptcy Fees, all of which shall be paid in full as required by 11 U.S.C. § 129(a)(9).

2.2.    **Administrative Expenses**. Administrative Expenses consist of Professional Fees and any allowed unpaid fees, costs and expenses incurred by the Debtor in maintaining the Property during the Chapter 11 case. To the extent that any Administrative Expenses have not been

8

paid prior to the Effective Date, each holder of an Administrative Claim shall be paid from the funds on deposit in the Confirmation Account.

2.3.     **Professional Fee Claims**. All requests for allowance of Professional Fee Claims shall be filed no later than thirty (30) days after the Effective Date in accordance with 11 U.S.C. § 330. After notice and a hearing, the allowed amounts of such Professional Fee Claims shall be paid by the Disbursing Agent from the Confirmation Account upon entry of an appropriate Order of the Bankruptcy Court awarding same.

2.4.     **Priority Tax Claims**. According to the Automated City Register Information System (ACRIS), unpaid real estate taxes, interest and penalties for the Property currently total approximately $1,019,150. The open and outstanding real estate taxes owed by the Debtor as of the Effective Date shall be treated as Priority Tax Claims and shall be paid in full on the Effective Date from the Confirmation Account.

2.5.     **U.S. Trustee Fees**. To the extent not otherwise paid, the Disbursing Agent shall pay all accrued unpaid U.S. Trustee Fees, together with any interest thereon, from monies held in the Confirmation Account. Bankruptcy Fees, together with any applicable interest, shall be paid until the Chapter 11 case is closed by entry of a Final Decree.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

3.1.     **Classification of Claims and Interests**. The Plan classifies Claims and Interests against the Debtor consistent with the applicable provisions and standards of the Bankruptcy Code.

3.2.     **Summary**. The categories listed below classify Claims and Equity Interest against the Debtor for all purposes, including voting, confirmation and distribution pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code, as summarized below:

| Class | Designation | Impaired | Entitled to Vote |
|-------|-------------|----------|------------------|
| Unclassified | Allowed Administrative Claims | No | No |
| Unclassified | Allowed Priority Tax Claims | No | No |
| Class 1 | Secured Lender | No | No, deemed to accept |
| Class 2 | Tenant | Yes | Yes |
| Class 3 | General Unsecured Claims | Yes | Yes |
| Class 4 | Equity Interest Holders | Yes | No, deemed to reject |

3.3.     **Class 1 — Secured Claim of the Lender**. Class 1 consists of the Secured Claim of the Lender.

**Treatment**: Upon the Effective Date or such later date as allowance of the Class 1 Claim is adjudicated and becomes the subject of a Final Order, the Class 1 Claim shall be paid (i) in cash in full on the Allowed amount of its Secured Claim, or (ii) such other amount as may be agreed upon between the Lender and the Tenant.  If the Class 1 Claim is a Disputed Claim, then pending entry of a Final Order adjudicating such dispute; Lender shall retain its Lien.  Lender shall share in the Unsecured Creditor Recovery Fund on the account of its deficiency claim, if any.

As of the Petition Date, the Debtor's Lender, Maguire Butler LLC ("Maguire"), which acquired Cathay Bank's mortgage and loan, asserted a senior secured claim of $13,522,866.15. Proponent disputes the amount of Maguire's claim on numerous legal bases, including, without limitation, because it is premised on the assertion of retroactive default interest going back to 2015 (more than 8 years in time), despite the fact that Cathay Bank did not assert *any* defaults until 2023, and even then only asserted a payment default that occurred in 2023.[1]

---

[1] Cathay Bank, filed a foreclosure action on April 18, 2023, alleging total amounts due under the loan of $8.3 million. Maguire subsequently purchased the loan from Cathay Bank, and on September 14, 2023, filed an amended foreclosure complaint alleging over $10.3 million in unpaid principal, plus an additional $3 million in default interest retroactive to May 12, 2015.

4889-5002-1328, v. 3

Maguire's claims for retroactive interest are barred by the loan documents, the expiration of the statute of limitations for asserting such claims and equity.   Additionally, while Maguire and the Debtor entered into a stipulation prior to the Chapter 11 Case, by which the Debtor agreed to the retroactive defaults in consideration for the release of Maguire's personal guaranties against the Debtor's principals, members of the Akkad family, this agreement constituted, among other things, a fraudulent transfer (i.e., layering debt obligations onto the estate for no consideration) – and a breach of fiduciary duty by the Akkads and/or the Debtor's members, managers and Related Persons.   Maguire knowingly participated in the Debtor's and the Akkad's wrongdoing.   As a result, the Proponent intends to object to Maguire's claim, as well as to commence an adversary proceeding seeking equitable subordination of the claim due to Maguire's egregious actions since acquiring the Cathay Bank mortgage and loan and engaging in a bad faith effort to protract this Chapter 11 Case to extract a hold-up payment.

**Voting**:  The Class 1 Claim is unimpaired and the Lender is deemed to accept the Plan.

3.4.    **Class 2 — Secured Judgment Lien Claim of the Tenant**. Class 2 consists of the allowed Secured Claim of the Tenant in the sum of at least $36,241,836, plus accrued interest.  The Class 2 Claim shall be deemed to be Allowed.

**Treatment**:  In consideration for the Proponent funding the Plan Consideration, the Allowed Class 2 Claim of the Tenant shall receive all of the Debtor's Assets, including the Property, and the Causes of Action.  By consent of Tenant, Tenant shall not share in the Unsecured Creditor Recovery Fund on the account of its deficiency claim.  For the avoidance of doubt, Tenant shall retain its deficiency claim to pursue its claims and causes of action against the Debtor's insiders and Related Persons, and nothing contained in this Plan shall prevent the Tenant from

pursuing its rights and remedies against the Debtor's Related Persons, all of which rights and remedies are preserved hereunder.

**Voting:** The Class 2 Claim is impaired, and Tenant is entitled to vote to accept or reject the Plan.

3.5. **Class 3 — General Unsecured Claims**. Class 3 consists of the Allowed General Unsecured Claims.

**Treatment**: On the Effective Date, each holder of an Allowed Class 3 General Unsecured Claim shall be paid a pro rata share of the Unsecured Creditor Recovery Fund in the sum of $150,000.

**Voting:** Class 3 is impaired, and each holder of an Allowed Class 3 Claim is entitled to vote to accept or reject the Plan.

3.6. **Class 4 — Equity Interests**. Class 4 consists of the respective membership and other interests of holders of Interests in the Debtor.

As discussed above, the Proponent believes that viable Causes of Action for, among other things, fraudulent transfers and breach of fiduciary duty exist against the holders of Class 4 Interests. The Proponent intends to pursue such actions against the Class 4 Interest holders and certain of their Related Persons following the Effective Date.

**Treatment**. Upon the Effective Date, the pre-petition equity and membership interests in the Debtor shall be deemed discharged, canceled and of no further force and effect, regardless of the outcome of any litigation commenced or pursued against the holders of Class 4 Interests, without any further action on the part of the Debtor (or Reorganized Debtor) or the Proponent, as applicable. Holders of Class 4 Interests will receive no distribution under the Plan.

**Voting**: The Class 4 Interests are deemed to reject the Plan, and the holders of Class 4 Interests are therefore not entitled to vote to accept or reject the Plan.

**ARTICLE IV**

**MEANS FOR IMPLEMENTING THE PLAN**

4.1.    **Implementation**.    On the Effective Date, in consider for the Plan payments contemplated in this Plan, the Debtor shall transfer all assets of the Debtor, including without limitation the Property, and the Causes of Action, by bargain and sale deed and bill of sale to the Proponent or its assignee or designee. Such transfer of the Property shall be free and clear of all Liens, Claims and encumbrances, except solely as set forth in Article III hereof with respect to the Class 1 Claim.

4.2.    On the Effective Date, the Proponent shall remit funds to the Disbursing Agent, sufficient to: (i) pay all Allowed Administrative Claims, and Priority Tax Claims; (ii) pay all U.S. Trustee Fees; and (iii) fund the Unsecured Creditor Recovery Fund.

4.3.    On the Effective Date, or such later date as a Final Order is entered fixing the Allowed first priority secured amount of the Class 1 Claim, the Proponent shall remit funds directly to the Lender by wire transfer consistent with its Plan treatment set forth in Article III above.

4.4.    The Plan and distributions provided herein shall be implemented through a transfer and conveyance of the Debtor's Assets, including without limitation, the Property, and the Causes of Action, to the Proponent or its assignee or designee without an auction. The Confirmation Order shall constitute an order of the Bankruptcy Court authorizing the Debtor for title purposes, on the occurrence of the Effective Date, to transfer and convey the Debtor's Assets, including without limitation, the Property, and the Causes of Action pursuant to 11 U.S.C. § 1129. The transfer and

13

conveyance shall be free and clear of all Liens, Claims, Encumbrances or interests, except set forth herein with respect to the Class 1 Claim.

4.5.    **Post-Closing Date Transactions**. At or after the Effective Date, the Disbursing Agent, on behalf of the Proponent, is hereby authorized to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the transfer and conveyance of the Debtor's Assets, including without limitation, the Property, and the Causes of Action, including the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of this Plan.

4.6.    **Vesting of Assets**. On the Effective Date, title to the Property and all other Assets of the Debtor's estate and all Causes of Action and any property and assets acquired by the Debtor prior hereto, shall be transferred to the Proponent or its assignee or designee pursuant to and in furtherance of this Plan by means of the following:

a.    a Bargain and Sale Deed to the Property in form and substance reasonably acceptable to the designated purchaser to be recorded in the appropriate register's office, together with any and all customary New York City and State closing documents, including all state and local real property transfer tax returns and any and all affidavits, certificates and other documents which are usual and customary to facilitate a sale of real property in New York City; and

b.    a Bill of Sale, in form and substance reasonably acceptable to the designated purchaser, transferring all personal property of the Debtor used in or useful to the operation and maintenance of the Property.

4.7.    **Transfer Tax Exemption**. To the fullest extent permitted by Section 1146(a) of the Bankruptcy Code, the transfer and conveyance of the Property shall be exempt from the

14

payment of transfer, stamp, deed, mortgage recording or similar taxes, since all of the transactions are being done, and constitute a "transfer under and in furtherance of a confirmed plan of reorganization" in bankruptcy.

      4.8.   **Preservation of Other Rights and Causes of Action**. All Causes of Action belonging to the Debtor shall be transferred and conveyed to the Proponent or its assignee or designee under this Plan and shall be vested in the Proponent or its assignee or designee following Confirmation of the Plan for prosecution as the Proponent or its assignee or designee deems necessary and appropriate. To the extent that the Proponent or its assignee or designee recovers any monies on account of the Causes of Action, the net proceeds remaining after payment of fees and expenses, including reasonable legal fees, shall be retained by the Proponent or its assignee or designee.

      4.9.   **Post-Confirmation Stays/Injunctions**. Except (i) as otherwise provided under Final Order entered by the Bankruptcy Court, (ii) with respect to the Debtor's or the Proponent's obligations under the Plan, or (iii) with respect to the Causes of Action acquired by the Proponent pursuant to the Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin with respect to any Claim held against the Debtor as of the date of entry of the Confirmation Order (i) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Property, or from property of the Debtor's estate that has been or is to be distributed under the Plan, and (ii) the creation, perfection or enforcement of any lien or encumbrance against the Property and any property of the Debtor's estate that has been or is to be, distributed under the Plan. Except as otherwise provided in the Confirmation Order, the entry of the Confirmation Order shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act

to collect, recover or offset from the Property, or from property of the Debtor's estate, any claim, any obligation or debt that was held against the Debtor by any person or entity as of the Confirmation Date except pursuant to the terms of this Plan. Except as set forth herein, the entry of the Confirmation Order shall permanently enjoin all Creditors, their successors and assigns, from enforcing or seeking to enforce any such Claims.

4.10.    **No Successor Liability**.  Except as otherwise expressly provided in this Plan or the Confirmation Order, none of the Proponent or its assignee or designee and each of their respective Related Persons, pursuant to this Plan or otherwise (a) assumes, agrees to perform, pay, or otherwise have any responsibilities for any liabilities or obligations of the Debtor or any other Person relating to or arising out of the operations or the Debtor's Assets, including without limitation, the Property, or the Causes of Action, on or prior to the Effective Date; (b) is, or shall be, a successor to the Debtor by reason of any theory of law or equity; or (c) shall have any successor or transferee liability of any kind or character.

4.11.    **Corporate Action**. The Proponent, the Debtor and the Reorganized Debtor, as applicable, may take any and all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of this Plan, in each case, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person (except for those expressly required pursuant hereto).

4.12.    **Cancellation or Assignment of Instruments, Securities and Other Documentation**.  Except to the extent otherwise provided under this Plan, on the Effective Date of this Plan and concurrently with the applicable distributions to be made pursuant to this Plan, all

existing Interests in the Debtor; all agreements, credit agreements, pre-petition loan documents, post-petition loan documents of the Debtor evidencing a Claim against the Debtor; and Lien claims and other evidence of Liens against any or all assets of the Debtor's estate, including, without limitation, the Property and the Causes of Action; shall be deemed to be discharged, canceled and of no further force and effect, without any further action on the part of the Proponent or the Debtor (or Reorganized Debtor), as applicable; provided, however, in lieu of such discharge and cancellation of Lender's mortgage and loan described above, at the Proponent's written election (the "Assignment Election"), Lender shall assign its mortgage encumbering the Property to the Proponent's or its assignee's or designee's lender (if any) and execute and deliver all such affidavits, certificates, agreements, instruments and other documents which are usual and customary to facilitate the foregoing assignment, in each case, in form and substance reasonably acceptable to the Proponent (or its assignee or designee) and any such lender thereto. If Proponent has not exercised the Assignment Election, the holders of or parties to such canceled instruments, agreements, securities and other documentation shall have no remaining rights arising from or relating to such instruments, agreements, securities and documents nor the cancellation thereof except the rights provided pursuant to this Plan; provided, however, except as set forth herein with respect to the Class 1 Claim, no distributions under this Plan shall be made to or on behalf of any holder of an Allowed Claim evidenced by such canceled instruments or securities unless and until such instruments or securities are marked canceled by the holders thereof and received by the Proponent. If Proponent has exercised the Assignment Election, Lender, as the assignor or other similar party to such assigned affidavits, certificates, agreements, instruments, securities and documents, shall have no remaining rights arising from or relating to such affidavits, certificates, agreements, instruments, securities and documents nor the assignment thereof except the rights

provided pursuant to this Plan; provided, however, except as set forth herein with respect to the Class 1 Claim, no distributions under this Plan shall be made to or on behalf of any holder of an Allowed Claim evidenced by such assigned affidavits, certificates, agreements, instruments, securities or documents unless and until such assigned affidavits, certificates, agreements, instruments, securities and other documents are assigned by the holders thereof and received by the Proponent's (or its assignee's or designee's) lender (if any).

4.13.    **Effect of Confirmation**. Except for the rights conferred under this Plan, any and all persons or entities who or which hold Claims or Interests against the Debtor, are hereby permanently and forever enjoined from instituting any action or proceeding whatsoever in law or equity relating to any and all prior transactions involving or relating to the Debtor or the Property; provided that nothing herein shall prevent the Proponent or its assignee or designee from pursuing the Causes of Action acquired by them under the Plan.

**ARTICLE V**

**PAYMENT OF DIVIDENDS**

5.1.    **Distributions**. The Disbursing Agent shall pay all required distributions to Creditors in accordance with the terms of the Plan on the Effective Date.

5.2.    **Delivery of Distributions**. The distributions to the holders of Allowed Claims shall be forwarded: (i) to the address set forth on any allowed proof of claim filed, or (ii) at the addresses reflected in the Debtor's Bankruptcy Schedules. In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Proponent has determined the then current address of such holder, at which time such distribution shall be made to such holder without interest; provided, however, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the date the distribution is made. After such date, all unclaimed property or interests

18

in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Proponent automatically and without need for a further order by the Bankruptcy Court and the Claim of any such holder to such property or interest in property shall be released, settled, compromised, and forever barred. The Proponent shall have no obligation to locate the current address for a returned distribution.

5.3.    **Procedures for Treating and Resolving Disputed Claims**. Objections to Claims shall be filed prior to the Claims Objection Date.

a.    In the event that a claim, other than the Class 1 Claim, is a Disputed Claim as of the date a distribution is to be made hereunder, the Disbursing Agent shall remit the full amount of the undisputed portion of the claim, and establish a Disputed Claim reserve, to be held by or on behalf of the Disbursing Agent, unless and until objections to the Disputed Claim have been settled or withdrawn or have been determined by a Final Order.  If the Disputed Claim is eventually allowed, in whole or part, it shall be satisfied from the Disputed Claim reserve. If the Disputed Claim is eventually disallowed, in whole or in part, the disallowed portion of the claim shall be released from the Disputed Claim reserve and returned to the Proponent.

b.    In the event the Class 1 Claim is a Disputed Claim as of the Effective Date, the Proponent shall not be required to deposit funds with the Disbursing Agent pending adjudication of the amount of the Allowed Senior Secured Claim.  Upon entry of a Final Order fixing the amount, validity and priority of the Allowed Class 1 Claim, the Proponent shall remit directly to the Lender cash in full in the amount of the unpaid portion of the Allowed Senior Secured Claim.

5.4.    **Unclaimed Distribution**. In the event any creditor fails to claim any distribution within one-hundred eighty (180) days from the date of issuance, such creditor shall forfeit all rights

thereto and the distribution shall revert to the Reorganized Debtor for redistribution in accordance with the terms hereof.

## ARTICLE VI

## EXECUTORY CONTRACTS

6.1.    The Net Lease with the Tenant shall be rejected as of the Effective Date.    Except as otherwise provided in this Section 6.1 of this Plan, any executory contract and unexpired lease that has not been expressly assumed by the Debtor with the Bankruptcy Court's approval on or prior to the Confirmation Date shall, as of the Confirmation Date (subject to the occurrence of the Effective Date), be deemed to have been rejected by the Debtor.    For the purposes of this Plan only, Tenant agrees to waive its right to a claim for rejection of the Net Lease.

## ARTICLE VII

## MODIFICATION OF THE PLAN

7.1.    The Proponent reserves the right to modify the Plan in accordance with § 1127 of the Bankruptcy Code as may be applicable, upon proper application after notice and a hearing.

## ARTICLE VIII

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND THE EFFECTIVE DATE OF THE PLAN

8.1.    **Conditions to Confirmation**.    Confirmation of this Plan shall not occur unless each of the following conditions has been satisfied or waived by the Proponent.

a.    the Bankruptcy Court shall have approved the Disclosure Statement as having contained adequate information and the solicitation of votes thereunder as having been in compliance with section 1126(b) of the Bankruptcy Code, and the Disclosure Statement Approval Order shall be in form and substance satisfactory to the Proponent.

4889-5002-1328, v. 3

b.      The Confirmation Order, and any other orders required to be entered in furtherance of Confirmation of this Plan pursuant to section 1129 and other applicable provisions of the Bankruptcy Code, shall have been entered, in form and substance acceptable to the Proponent.

c.      This Plan and all schedules, documents, supplements and exhibits to this Plan shall have been filed in form and substance acceptable to the Proponent.

8.2.    **Conditions Precedent to the Effective Date**. The Effective Date of this Plan shall not occur unless and until each of the following conditions has been satisfied or, if applicable, waived by the Proponent:

a.      Confirmation shall have occurred and the Confirmation Order shall have been entered by the Bankruptcy Court;

b.      The Confirmation Order shall have become a Final Order, unless the Bankruptcy Court waives the period set forth in Bankruptcy Rule 6004(h);

c.      All schedules, documents, supplements and exhibits to this Plan in form and substance acceptable to the Proponent, necessary or appropriate to implement this Plan, shall have been executed, delivered and, where applicable, filed with the appropriate Governmental Unit;

d.      All material third-party consents, actions, documents, certificates and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable laws;

e.      The Plan Consideration shall have been received by the Disbursing Agent (except as contemplated with respect to the Class 1 Claim pending entry of a Final Order fixing

21

the Allowed secured amount of such Claim), and title to the Property shall have been conveyed to

the Proponent or its assignee or designee in accordance with this Plan and the Confirmation Order;

and

      f.    There shall not be in effect on the Effective Date any Order entered by a

court of competent jurisdiction staying, restraining, enjoining or otherwise prohibiting or making

illegal the consummation of any of the transactions contemplated by the Plan.

## ARTICLE IX

## **RETENTION OF JURISDICTION**

9.1.    Until the Chapter 11 Case is closed, the Bankruptcy Court shall retain the fullest

and most extensive jurisdiction permissible, including that necessary to ensure that the purposes

and intent of this Plan are carried out. The Bankruptcy Court shall retain jurisdiction over the

following matters: (i) consideration of any modification of the Plan under § 1127 of the Bankruptcy

Code; (ii) to resolve all matters arising under or relating to the Plan, including, without limitation,

the approval, consummation, enforcement, and interpretation of any issues or disputes relating to

the transfer and conveyance of the Debtor's Assets, including without limitation, the Property, and

the Causes of Action, and the occurrence of the Effective Date; (iii) to hear and determine all

controversies, suits and disputes that may arise in connection with the interpretation or

enforcement of the Plan; (iv) to determine any objections to Claims; (v) to decide or resolve any

motions, adversary proceedings, contested or litigated matters and any other matters and grant or

deny any applications involving the Debtor that may be pending on the Effective Date, or brought

thereafter by the Proponent, including the Causes of Action retained and preserved under this Plan,

and to hear and determine any motions or contested matters involving taxes, tax refunds, tax

attributes, tax benefits, and similar or related matters with respect to the Debtor (or Reorganized

Debtor) arising on or prior to the Effective Date, arising on account of transactions contemplated by the Plan documents, or relating to the period of administration of the Chapter 11 Case; (vi) to hear and determine all requests and applications for compensation and/or reimbursement of expenses which may be filed by the Debtor's counsel; (vii) to consider any other matters to aid in the implementation of the Plan; (viii) to hear and determine all questions and disputes regarding title to the Assets, including without limitation, the Property, and the Causes of Action, of the Debtor or the Debtor's estate; (ix) to hear and determine any other matters related hereto, including the implementation and enforcement of all orders entered by the Bankruptcy Court in the Chapter 11 Case; (x) to correct any defect, cure any omission, reconcile any inconsistency, or make any other necessary changes or modifications in or to this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan, including the adjustment of the date(s) of performance under the Plan documents in the event that the Effective Date does not occur as provided herein so that the intended effect of this Plan may be substantially realized thereby; and (xi) to issue a Final Decree. Nothing contained herein shall prevent the Proponent from taking such action as may be necessary in the enforcement of any Cause of Action, including, but not limited to, Avoidance Actions, which the Debtor has or may have and which may not have been enforced or prosecuted by the Debtor, which cause of action, including, but not limited to, Avoidance Actions, shall survive confirmation of this Plan and shall not be affected thereby except as specifically provided herein.

## ARTICLE X

## **GENERAL PROVISIONS**

10.1.    **Substantial Consummation**.    The Plan shall be deemed substantially consummated on the Effective Date.

10.2.  **Payment Dates**. Whenever any payment or distribution to be made under this Plan shall be due on a day other than a business day, such payment or distribution shall instead be made on the following business day.

10.3.  **Legally Binding Effect**.  The provisions of the Plan shall bind all Creditors and Interest holders, whether or not they accept the Plan and wherever located.

10.4.  **Immediate Binding Effect**.  Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Proponent, the Debtor, the holders of Claims and Interests, and each of their respective successors and assigns, including, without limitation, the Reorganized Debtor.

10.5.  **Withdrawal of Plan**.  The Proponent reserves the right to withdraw the Plan at any time prior to the Confirmation Date. If the Proponent withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute an admission, waiver or release of any claims by or against the Proponent or any other person, or to prejudice in any manner the rights of the Proponent or any person in any further proceedings involving the Debtor.

10.6.  **Due Authorization by Holders of Claims and Interests**.  Each and every holder of a Claim or Equity Interest who elects to participate in the distributions provided for herein warrants that such holder is authorized to accept in consideration of its Claim or Interest against the Debtor the distributions provided for in the Plan, and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by such holder under the Plan.

4889-5002-1328, v. 3

10.7.    **Entire Agreement**. On the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

10.8.    **Post-Confirmation Reports**. The Debtor shall file quarterly post-confirmation status and disbursement reports, beginning on the Effective Date, by the twentieth (20th) day after the end of the relevant reporting quarter, using the forms promulgated in compliance with 28 CFR § 58.8. The post-confirmation status and disbursement reports shall be filed until the closing of this case with the entry of a final decree, the dismissal of this case, or the conversion of this case, whichever happens earlier.

10.9.    **Payments of U.S. Trustee Fees**. All U.S. Trustee Fees payable to the Office of the United States Trustee, together with all applicable interest, shall be brought current on the Effective Date and timely paid thereafter through the earlier of conversion, dismissal or entry of a Final Decree closing the Chapter 11 Case.

10.10.    **Governing Law**. Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of New York, without giving effect to the principles of conflicts of law thereof.

10.11.    **Filing of Additional Documentation**. By the Plan Supplement Deadline, the Proponent may file with the Bankruptcy Court such Plan Supplement, agreements and other documents as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan or any Plan document.

4889-5002-1328, v. 3

10.12.    **Successors and Assigns**. The rights, benefits and obligations of any entity named or referred to in the Plan or any Plan document shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

10.13.    **Notice of Effectiveness**. Within three (3) business days after the entry of the Effective Date, the Debtor shall file a notice of the occurrence of the Effective Date.

10.14.    **No Admissions.** Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by the Proponent with respect to any matter set forth herein, including, without limitation, liability on any Claim or Equity Interest or the propriety of the classification of any Claim or Equity Interest.

10.15.    **Entry of Final Decree**. Within fourteen (14) days following the full administration of the estate, but not later than eighteen (18) months following the entry of the order confirming a plan, the Proponent or such other party as the Court shall designate in the Confirmation Order,  shall file, on notice to the United States Trustee, an application and a proposed order for a final decree pursuant to Bankruptcy Rule 3022.

10.16.    **Headings**. The headings in this Plan are for reference purposes only and shall not limit or otherwise affect the meaning of the terms of this Plan.

Dated: Mineola, New York
            July 11, 2024

255 Butler Associates LLC

By:  Muli LLC, its sole member

    By: */s/ Sam Boymelgreen*
        Sam Boymelgreen, Manager

Meltzer, Lippe, Goldstein & Breitstone, LLP

By: */s/ Scott A. Steinberg*
    Scott A. Steinberg, Esq.
    190 Willis Avenue
    Mineola, New York 11501
    Tel.:  516-747-0300
    ssteinberg@meltzerlippe.com

4889-5002-1328, v. 3